# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **DON WOODS** | **CASE NO. 6:21-CV-01930** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action.

## Administrative Proceedings

Claimant, Don Woods, fully exhausted his administrative remedies before filing this action in federal court. He filed an application for disability insurance benefits and supplemental security income alleging disability beginning on October 1, 2018.[1] His application was denied. (Rec. Doc. 4-1, p. 262). He then requested a

---

[1] Claimant initially alleged disability beginning on January 1, 2016. The onset date was amended to October 1, 2018 at the hearing because Claimant's work rose above the SGA level in the fourth quarter of 2018. (Rec. Doc. 4-1, p. 157).

hearing, which was held on December 18, 2020, before Administrative Law Judge Steven Rachal. The ALJ issued a decision on January 27, 2021, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 4-1, p. 127). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 4-1, p. 8). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on August 16, 1978. He was 40 years old on the alleged disability onset date and 42 years old at the time of the ALJ's decision. He testified at the hearing that he has a tenth-grade education and past relevant work as a construction worker, grocery stocker, and fast-food worker. He most recently worked from 2012 through 2020 at Popeye's restaurant. (Rec. Doc. 4-1, p. 160-62). After suffering a heart attack in 2015, he underwent placement of a stent, and he suffers from arthritis and sciatic pain in his lower back as well as eosinophilia. (Rec. Doc. 4-1, p. 163-64). At the time of the hearing, he was 5'9" and 220 pounds. (Rec. Doc. 4-1, p. 164). He admitted to using marijuana twice a week. (Rec. Doc. 4-1, p. 166). The medical records in the record reveal the following pertinent history:

- In August 2015 Claimant was admitted to ICU for cardiology findings consistent with ST segment myocardial infarction. He underwent left heart catheterization with left ventriculogram and a stent was placed. He was also diagnosed with pericarditis and polysubstance abuse for tobacco and alcohol. (Rec. Doc. 4-1, p. 238-60).

- Claimant presented to the emergency room at University Health and Opelousas General several times in 2016 for chest pain, sinus congestion, bronchitis, and shortness of breath. Diagnoses included atypical chest pain, coronary artery disease, hypertension, and hyperlipidemia. He was admitted in December 2016 for ongoing chest pain and history of heart attack. (Rec. Doc. 4-1, p. 599-651; Rec. Doc. 4-1, p. 165-211; 322-44).

- Claimant treated with Dr. Elizabeth Collins and Dr. Jamie Collins for primary care during 2016 and 2017. Complaints included ongoing sinus trouble, chronic coughing, chest tightness, wheezing, and shortness of breath. He was treated for left ankle tendonitis, coronary artery disease, hypertension, unstable angina, chronic cough, rhinitis, and eosinophilia, for which he was referred to hematology and pulmonology. A drug test in May 2016 was positive for THC and cocaine. In 2017, he complained about a lump in his right thigh, which was suspected to be a lipoma. (Rec. Doc. 4-1, p. 96-127;

Rec. Doc. 4-1, p. 266-97). See also OGH records regarding lipoma at Rec. Doc. 4-1, p. 298-303).

- A July 2016 pulmonology report showed no obstruction, normal total lung capacity, and normal diffusion capacity. (Rec. Doc. 4-2, p. 606).

- During 2017 Claimant followed up at University Hospital for coronary artery disease and hyperlipidemia with various tests. The stent was in place and no indication for bypass in June 2017. (Rec. Doc. 4-1, p. 414).

- In late 2017, he continued to treat at the University clinic for asthmatic symptoms and was referred for emergent treatment in January 2018 when his symptoms did not improve. (Rec. Doc. 4-2, p. 621-26). In January 2018, Claimant presented to the University Hospital emergency room with chest pain and pneumonitis. He was discharged with medication and instruction to follow up with his doctor. (Rec. Doc. 4-2, p. 598-603).

- In May 2018, Claimant suffered from reversible inferior wall ischema and underwent left heart catherization. (Rec. Doc. 4-2, p. 762).

- Claimant treated at the Oncology Clinic at OGH in 2018 for eosinophilia. In September 2018, it was noted that he had documented elevated eosinophils since 2017 and that he had been stable on observation without any clinical concerning symptoms. On presentation at that time, he advised feeling fatigued and night sweats and chills, but he had no fever, lymphadenopathy,

4

- sore throat, cough, congestion, or other URI type symptoms. He was referred for a bone marrow biopsy, which returned without abnormalities. He remained in an observation status as the condition was stable. (Rec. Doc. 4-2, p. 527-38).

- By October 2018, Claimant felt his asthma and shortness of breath issues were better controlled with a Brio aneurysm inhaler. Dr. John Clyde noted that he had peripheral eosinophilia but not to a degree that would suggest hyperosinophilic syndrome or EGPA. Claimant remained on inhalers and a follow up status. (Rec. Doc. 4-2, p. 626-40).

- In April 2019, Claimant presented to the University Hospital emergency room with shortness of breath, wheezing, and sinus issues. Marijuana use was noted. He was diagnosed with asthma. (Rec. Doc. 4-2, p. 590-97).

- In September 2019 Claimant presented to the University Hospital emergency room with back pain radiating into his left leg. He was discharged with medication. (Rec. Doc. 4-2, p. 583-89).

- He treated at OGH cardiology clinic throughout 2019 for ongoing chest pain. In May 2019 he had possible pericarditis/costochondritis. In October 2019 he presented for anterior chest pressure with left shoulder/arm pain. Marijuana use noted and that he had smoked for twenty years but had quit at 35. He was given morphine oxygen nitro and aspirin and referred to cardiology. He was

also noted to have mild acute renal failure for which he was advised to avoid nephrotoxic medications and slowly hydrate. (Rec. Doc. 4-2, p. 725-740).

- He was sent to the ER in November 2019 after completing a stress test and developing weakness and shortness of breath. He was diagnosed with atypical chest pain and discharged with medication. He visited the ER multiple times in 2019 for related issues, back pain, abdominal issues, and hematuria/UTI. (Rec. Doc. 4-2, p. 767-821).

- Claimant followed up with his primary care physician, Dr. Jamie Collins throughout 2018 and 2019 following the foregoing ER visits. Diagnoses included coronary artery disease, heart artery stent, hypertension, unstable angina, chest pain, marijuana abuse, dizziness, left foot pain, eosinophilia, chronic cough, plantar fasciitis, anxiety (well controlled with Prozac), and sciatica (beginning in January 2019). He was treated with inhalers and medication. In November 2019, Dr. Collins noted that Claimant's stress test had been negative. Dr. Collins opined his ongoing chest pain was musculoskeletal. (Rec. Doc. 4-2, p. 1192-1245).

- Claimant followed up with the Cardiovascular Institute of the South during 2015 and in 2018 through 2020 for his heart and chest issues. He underwent a battery of tests and was given medication, including dexamethasone, Augmentin, Lasix, and Plavix. He was ultimately sent for a left heart

catherization in May 2018. It was noted thereafter that he had significant diastolic dysfunction for which he was given a low-dose diuretic. By July 2018, it was noted that after medicine adjustment his blood pressure was well controlled with Lasix. He was scheduled for another left hearth catherization in May 2019 after worsening angina. It revealed patent coronary arteries and patent stenting. He had tenderness and discomfort at the insertion site. By July 2019, he was to return to normal activity levels and return as needed. In November 2019 he was scheduled for an ETT nuclear stress test due to diffuse ST elevation secondary to early repolarization abnormality. The December 2019 study revealed no significant ischemia but with increased chest pain with exertion such that he was transferred to the ER. It was noted he had a sluggish TIMI II flow indicating possible microvascular disease. (Rec. Doc. 4-3, p. 10 et seq).

- In his follow-ups at the Cardiovascular Institute of the South, in January 2020, it was noted that his work up had been negative. He was to follow up with pulmonology. By July 2020, he denied shortness of breath but reported his usual chest pain. With ongoing complaints of chest pain, a new stress test was done in late 2020. Perfusion imaging revealed no reversible ischemia. He was to follow up as normal. (Rec. Doc. 4-3, p. 327-53).

- Claimant again visited the ER for chest pain in January 2020. He was noted to have no active pulmonary disease. The physician did not believe his pain was cardiac in nature. Repeat troponin and EKG showed no changes. (Rec. Doc. 4-3, p. 164-72).

- In 2019 and 2020, Claimant saw Dr. Andrew Collins for his history of eosinophilia and persistent asthma. He treated severe persistent asthma with Symbicort and other inhaled therapy, which helped to control the asthma. Dr. Collins also prescribed Dupixent injections for chronic rhinitis and sinusitis. They continued to monitor his eosinophilia. Due to certain lab results, Claimant was tested for HIV, which was negative. (Rec. Doc. 4-3, p. 205-234).

- Claimant went to the OGH ER for low back pain and sciatica in November 2020. He had recently been seen by a cardiologist, who ruled out deep vein thrombosis. A lumbar x-ray revealed levoscoliosis with minimal degenerative changes. Marijuana use was noted. (Rec. Doc. 4-3, p. 144-55).

- Claimant continued to follow up with OGH for eosinophilic pneumonitis in January and December 2020. No further action was taken other than to continue monitoring. (Rec. Doc. 4-3, p. 138-42; 172-89).

- Claimant also continued to follow up with Dr. Jamie Collins throughout 2020 for ongoing shortness of breath and usual complaints of chest pain. At one

visit, he also complained of cervical radiculopathy, including right sided neck pain radiating down the right shoulder and arm with chest pain. Physical examination in January 2020 showed full range of motion, good grip and strength, no arm weakness, cervical spine crepitus, or shoulder pathology. Marijuana abuse was again noted. In December 2020, he again complained of low back pain. (Rec. Doc. 4-3, p. 303-23).

After the ALJ hearing on December 18, 2020, Claimant had an emergency cervical surgery, as evidence by the following new medical records submitted after the hearing:

- On January 27, 2021 (the day the ALJ issued his opinion finding Claimant not disabled), Claimant underwent cervical fusion at C6-7 by Dr. Ilyas Munshi. Prior to surgery he reported difficulty walking with a drag in his left foot and use of a walker. He had noted weakness in his lower extremities and severe canal stenosis at C6-7 with cord compression and disc protrusions as well as significant lumbar degenerative disease. He had experienced incontinence and difficulty urinating. (Rec. Doc. 4-1, p. 77-107).

- In March to April 2021 he did physical therapy for pain and numbness in his legs and feet. Patient noted that prior to the surgery he was able to perform all activities of daily living without limitations. He was discharged per his request with progress noted from start to end of care. (Rec. Doc. 4-1, p. 19-67).

Claimant testified at the ALJ hearing (prior to the cervical surgery) that he could not stand or walk for more than thirty minutes to an hour or sit for more than an hour due to his back pain and swelling feet. (Rec. Doc. 4-1, p. 166-67). He stated that he could not lift heavy items or move more than a few small objects because he gets cramps in his hand. (Rec. Doc. 4-1, p. 168-69). He is unable to drive due to shortness of breath and chest pains. (Rec. Doc. 4-1, p. 169).

The ALJ found that Claimant is capable of performing light work with the only restriction to avoid exposure to fumes, odors, dusts, gases, and poor ventilation. As such, the ALJ found that Claimant is capable of performing his past relevant work and was not disabled. (Rec. Doc. 4-1, p. 136-141). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial

evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B. <u>Entitlement to Benefits</u>

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and

disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C. **Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do

the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th

Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D. The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since October 1, 2018. (Rec. Doc. 4-1, p. 133). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: coronary artery disease, asthma, eosinophilia, obesity, mild scoliosis and minimal degenerative changes of the lumber spine, hyperlipidemia, and hypertension. (Rec. Doc. 4-1, p. 133). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 4). Claimant does not challenge this finding.

The ALJ next determined that Claimant has the residual functional capacity (RFC) to perform light work with a restriction for occasional exposure to fumes, odors, dusts, gases, and poor ventilation. Claimant challenges this finding.

At step four, the ALJ found Claimant is capable of performing past relevant work as a fast-food worker and press operator. Thus, the ALJ did not proceed to step five. Claimant challenges this finding.

### E. **The Allegations of Error**

Claimant alleges the ALJ erred as follows: 1) failing to assess an accurate RFC in light of the evidence; 2) relying on a flawed RFC to find Claimant could perform past relevant work; and 3) the Appeals Council failed to reverse in light of new evidence of Claimant's cervical fusion.

The Court shall first address whether Claimant's newly submitted evidence is material, because, as discussed below, this issue is determinative.

### F. **Whether the Appeals Council failed to properly consider new evidence of Claimant's neck surgery.**

Claimant underwent an emergency cervical fusion on January 27, 2021, after the ALJ hearing. Claimant submitted this evidence to the Appeals Council, which found that the evidence did not show a reasonable probability that it would change the outcome of the decision. (Rec. Doc. 4-1, p. 9).

Claimants are free to submit new evidence to the Appeals Council. 20 C.F.R. § 404.968(a). Such evidence is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhard*, 405 F.3d 332, 337 (5th Cir. 2005). The district court must examine all of the evidence, including the new evidence, to determine whether the Commissioner's final decision to deny a claim is supported by substantial evidence. *Sun v. Colvin*, 793 F.3d 502, 510 (5th Cir. 2015). Newly submitted evidence is material if (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability

15

that it would have changed the outcome of the disability determination. *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003) (per curiam); 20 C.F.R. § 404.970(a)(5). "[T]he new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling." *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995). When the new evidence does not relate to the contested time period or concerns a subsequently acquired disability, the proper action is to file a new application for disability benefits based on the new condition. *Id*.

The Court finds that the newly submitted evidence of Claimant's neck surgery related to the relevant time period. Though insubstantial when compared to Claimant's ongoing complaints for shortness of breath and chest pain, Claimant's complaints of neck pain and radiculopathy were evidenced in the record before the ALJ. (See e.g. Dr. Collins's records at Rec. Doc. 4-3, p. 303-23).

The Court next finds that there is a reasonable probability that the new evidence could have changed the outcome of the ALJ's disability determination. In assessing Claimant's RFC, the ALJ found that Claimant was capable of performing light duty work with a restriction aimed at his respiratory issues. (Rec. Doc. 4-1, p. 136-). The ALJ correctly based his finding on the substantial medical evidence regarding Claimant's cardiovascular and respiratory issues. Although the ALJ considered the relatively minimal evidence regarding Claimant's spinal complaints,

16

the ALJ did not have evidence of the extent of Claimant's cervical impairments and subsequent surgery. A proper RFC determination would certainly consider the claimant's functional ability and could reasonably impose further restrictions based on the severity and extent of the cervical condition depicted in the new evidence. The ALJ was without the benefit of this evidence. The Appeals Council to failed consider the effect of the new evidence on a determination of Claimant's RFC. Accordingly, remand is warranted.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to again evaluate Claimant's residual functional capacity in light of the new evidence related to Claimant's cervical spine condition. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA").[2]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of

---

[2] See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[3]

Signed in Lafayette, Louisiana, this 16th day of February, 2022.

*[signature]*
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[3] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).